88 643
88 369
88 370

Edwards v. Cleveland Dryer Co.

## Henry J. Edwards and Henry W. Hoyt v. The Cleveland Dryer Co.

1. STATUTES—*Construction of Sec. 16, Chap. 32, R. S., "Corporations."*—The liability imposed by section 16 of chapter 32, R. S., entitled "Corporations," is not penal, but contractual, like that of a surety, therefore *stricti juris*, and should receive a construction in consonance with the nature of the obligation imposed.

2. Same—*Construction of Sec. 18, Chap. 32, " Corporations."*—Section 18 of chapter 32, entitled " Corporations," must be strictly construed, and creditors seeking a remedy under it must prove a case clearly within the terms of the section.

3. Same—*Liability under Section 18, Chapter 32, R. S.*—Under section 18 of chapter 32, R. S., entitled " Corporations," officers, agents and directors are made jointly and severally liable for the debts and liabilities of the corporation made by them in the name of the corporation before all of the stock named in the articles of incorporation is subscribed for in good faith, but some affirmative voluntary act or some active participation or co-operation in the particular transaction is necessary to the incurring of such liability.

4. Corporations —*Liability of Directors When the Indebtedness exceeds the Amount of Capital Stock.*—The liability under section 16 of chapter 32, R. S., is created only when the indebtedness of the corporation exceeds the amount of the capital stock and is imposed only upon the directors and officers assenting to such indebtedness.

5. Same—*Assent Must Be by an Affirmative Act.*—The assent of the directors or officers, to the creation of indebtedness of the corporation, can only be given by some affirmative or voluntary act on their part, or at least some active participation or co-operation in the particular transaction out of which the indebtedness arises.

6. Same—*Rights of Creditors of De Facto Corporations—Estoppel.*— Creditors of a *de facto* corporation, who have dealt with it as a corporation, can not complain, because having so dealt with it, they can not be heard to deny its corporate existence nor hold its officers or agents contracting in its name personally liable.

Assumpsit, on promissory notes. Trial in the Superior Court of Cook County; the Hon. Samuel C. Stough, Judge, presiding. Verdict and judgment for plaintiff against the defendants Hoyt and Edwards. Appeal by said defendants. Heard in this court at the March term, 1899. Reversed and remanded. Opinion filed July 20, 1899.

Statement.—This is an appeal from a judgment for $866.26, rendered in an action of assumpsit by appellee against appellants and Frank E. Barnard, Lewis E. Pennington, John Hasse, William N. Thompson, Henry Patterson, Charles Edwards, H. J. Haskell, John S. Perley, E. G. Keith, A. W. Martin, A. L. Nestlerode, C. D. Barnard, Henry J. Edwards and Henry W. Hoyt. Appellants were the only defendants who were served or appeared.

The declaration contains eight special counts and the common counts. Attached to the declaration are copies of four promissory notes dated, respectively, August 2, July

27, September 2 and October 7, 1897, each for the sum of $204, payable to the order of the Cleveland Dryer Co., and signed "Thompson & Edwards Fertilizer Co. F. E. Barnard, Sec'y and Treasurer. Countersigned, A. L. Nestlerode, Gen'l Manager."

Each of the first two notes is due four months after date, the third ninety days after date, and the fourth December 15, 1897.

Following the copies of the notes attached to the declaration, is an affidavit of John V. A. Weaver, "Agent and attorney of plaintiff," stating that the demand of the plaintiff is for the amounts due on the notes, copies of which are attached to the declaration, and that there is due to plaintiff, after allowing all just credits, deductions and set-offs, $816.

The first count of the declaration avers, in substance, that on the 27th day of July, 1897, at the city of Chicago, in said county, "said defendants, pretending to be directors and officers of a pretended stock corporation by the name of Thompson & Edwards Fertilizer Company," assumed to exercise corporate powers and to use the name of said pretended corporation without having theretofore complied with the statute of this State, entitled "An Act Concerning Corporations," etc., that is to say: said defendants did not file or cause to be filed, and there had not been filed prior to, or on, the 27th day of July, 1897, in the office of the recorder of deeds of Cook county, in which county was the principal office of said pretended corporation, a certificate from the Secretary of State of Illinois of the complete organization of said corporation, " and, so assuming and pretending, as aforesaid, said defendants made their certain note in writing, commonly called a promissory note, bearing date the day and year last aforesaid, and then and there delivered the said note.to the said plaintiff, in and by which said note, the said defendants, by the name, style and description of Thompson & Edwards Fertilizer Company, by F. E. Barnard, secretary and treasurer, promised to pay to the order of said plaintiff, by the name, style and description of

The Cleveland Dryer Company, at the Drover's National Bank, the sum of two hundred and four dollars ($204) four months after date, with interest at the rate of seven per cent per annum after maturity, for value received, * * * whereby, and by force of the statute in such case made and provided, said defendants became and were jointly and severally liable to pay to the plaintiff the said sum of money so due upon their said promissory note, so made by them under the name of such pretended corporation."

The second count is as follows:

" For that whereas, also, the said defendants, heretofore, to wit, on the 27th day of July, 1897, in the county aforesaid, as partners doing business under the firm name and style of Thompson & Edwards Fertilizer Company, made their certain note in writing, commonly called a promissory note, bearing date the day and year last aforesaid, and then and there delivered the said note to the said plaintiff, in and by which said note the said defendants, by the firm name, style and description of Thompson & Edwards Fertilizer Company promised to pay to the order of said plaintiff, by the name, style and description of the Cleveland Dryer Company, the sum of two hundred and four dollars ($204) four months after date, with interest at seven per cent per annum after maturity until paid, at the Drover's National Bank, for value received, by means whereof the said defendants became liable to pay to the said plaintiff the said amount in the said note specified, according to the tenor and effect thereof, and being so liable, the said defendants, in consideration thereof, afterwards, to wit, on the same day and year last aforesaid, at the place aforesaid, undertook and promised the said plaintiff to pay unto the said plaintiff the said amount in the said note specified, according to its tenor and effect."

The third, fifth and seventh counts of the declaration are the same as the first count, with the exception of such changes in the descriptive averments as to make them correspond with the three other notes declared on, and the fourth, sixth and eighth counts, excepting like changes, are the same as the second count.

Appellants, Henry W. Hoyt and Henry J. Edwards, each pleaded the general issue to the whole declaration, and also filed three special pleas to the whole declaration, which

were verified by his affidavit, viz.: a plea denying the execution of the notes; a plea denying joint liability with the other defendants named in the declaration in respect to the supposed causes of action; and a plea denying partnership with the other defendants named in the declaration in respect to the supposed causes of action.   Issue was joined on these pleas.

The certificate of the complete organization of the Thompson & Edwards Fertilizer Company was issued by the Secretary of State January 10, 1886.   The object for which it was incorporated was the manufacture and sale of commercial fertilizers; the amount of its capital stock was one hundred thousand dollars, divided into one thousand shares of one hundred dollars each, and its principal office was at the Union Stock Yards, in the city of Chicago, Cook county, Illinois.   The evidence shows that all the necessary steps to perfect its organization were taken, except that its certificate of organization was not recorded; that its board of directors elected proper officers, and that it proceeded to the transaction of business as a corporation, and continued so to transact business until about November 1, 1897, a period of more than ten years.   Appellant Henry J. Edwards was one of the original subscribers for stock, and, January 11, 1897, was elected a director for one year then next ensuing.   Appellant Hoyt became a stockholder in May, 1895, by the purchase of twenty-two shares of stock from William N. Thompson, one of the defendants in the action, the certificates of the shares so purchased being surrendered to the company and new certificates issued to Hoyt in lieu thereof.   Hoyt became a director in May, 1895, and continued to be such up to and including the time of the commencement of the suit.   Appellee introduced in evidence the by-laws of the company, consisting of twenty-two articles, also minutes of a meeting of the stockholders held January 11, 1897, and minutes of meetings of the directors held January 5th, January 14th and February 26, 1897.   At the stockholders' meeting of January 11th there were in all present or represented by proxy, H. W.

Hoyt, H. J. Haskell, D. W. Kinsley, Jr., John Hasse, Henry Patterson, E. G. Keith, F. E. Barnard, F. M. Barnard, John Q. Perley and C. D. Barnard; and there were elected as directors for the ensuing year H. W. Hoyt, A. W. Martin, H. J. Edwards, F. E. Barnard and John Hasse. At the directors' meeting held January 14, 1897, A. L. Nestlerode was appointed general manager of the Thompson & Edwards Fertilizer Company. At the directors' meeting of February 26, 1897, all the directors being present, certain amendments were made of the by-laws, among which article 12 of the by-laws was amended so as to read as follows:

" The president, vice president and secretary and treasurer (one person) shall jointly be empowered to buy, sell, mortgage or lease any real estate and execute deeds therefor. The secretary and treasurer shall be empowered to sign and evidence notes, checks and drafts necessary for the ordinary business of the company, but all such notes, checks and drafts must be countersigned by the general manager."

At the same meeting the resignation of A. W. Martin was accepted and A. L. Nestlerode was chosen to succeed him as director. F. E. Barnard became secretary and treasurer of the Fertilizer Company, June 1, 1886, and continued to be such up to November 1, 1897, when the company ceased to do business. He had full charge of the financial business of the company.

F. E. Barnard, witness for appellee, testified to the genuineness of the signatures to the notes, which were put in evidence, and that he signed the following document, which was also put in evidence by appellee:

" H. W. Hoyt, Prest.        F. E. Barnard, Sec'y & Treas.
" D. W. Kinsley, Jr., Asst. Secy.
Established 1864.
Incorporated 1886.
" Union Stock Yards.
" Thompson & Edwards Company,
" Tallow, Grease, Calf Skins and Cracklings.
" Telephone Yards 757.
" Chicago, July 17, 1897.
" Cleveland Dryer Co., Cleveland, O.
" Gents: We have this day bought from you 100 tons

dry acid-phosphate at $10.00 per ton, delivered at Chicago, shipments to be made as follows:

July 19th, '97, 1 car 25 tons.
  "   26th,  "   1  "  25   "
Aug.  2,    "   1  "  25   "
Aug.  9,    "   1  "  25   "

"Terms, 2 notes, at 4 mos., with 6% interest per annum added.  Freight cash.

"Analysis guaranteed 16% minimum available.

      "Yours truly,

              "THOMPSON & EDWARDS FERTILIZER CO.,

                      "F. E. BARNARD, Secy. & Treas.

"Accepted:

      "THE CLEVELAND DRYER CO.,

          "WM. PRESCOTT, Prest."

He further testified that the Fertilizer Company received the material mentioned in the contract, and that the notes were given in settlement for the material so received; that he and Nestlerode purchased the material; that he never mentioned the matter to Hoyt at the time of the purchase or at any other time, and neither appellant Hoyt nor appellant Edwards was present when the contract was signed, or at any time when the negotiation for the purchase was going on; that neither Hoyt nor Edwards had anything to do with the execution or delivery of the notes; that no one except himself and Nestlerode had anything to do with the transaction.  This witness further testified that the stockholders, at the time he signed the contract, were Henry J. Edwards, Charles Edwards, H. W. Hoyt, L. E. Pennington, John Hasse, Henry Patterson, H. J. Haskell, and himself, F. E. Barnard.

Hoyt testified that, except attending directors' meetings, he had nothing to do with the business of the company; that he knew nothing of and was never consulted about the details of the business by either Barnard or Nestlerode, or with reference to any transaction with appellee, and that he was not acquainted with any of appellee's directors, officers, agents or representatives.  The judgment is against appellants Hoyt and Edwards only.

HAWLEY & PROUTY, attorneys for appellant Henry W. Hoyt.

The indebtedness of the company to appellee for cash advanced by her, and the wages earned by her husband and sons and credited to her as cash, having been incurred before appellant Hoyt became a director of the company, he can not be held liable as a director for that indebtedness. That indebtedness or liability can not be said to have been made by him, and to hold him under the statute, he must have participated, at least, in the making of the debt or liability. Lewis v. Montgomery, 145 Ill. 30; Hoyt v. Hasse, 80 Ill. App. 187; Diversey v. Smith, 103 Ill. 378.

A. W. MARTIN, attorney for appellant Henry J. Edwards.

"A creditor is entitled to recover if he shows that he is a creditor; that the defendants are such officers, agents or directors as are mentioned in section 18, and that one of the provisions of the act, such as the requirement to record the certificate, has not been complied with."

All these facts, however, have not been shown by the appellee in the case at bar. Loverin v. McLaughlin, 161 Ill. 434.

When a creditor has dealt with a corporation as such, a partnership liability can not be enforced, even though the corporation has not been legally organized. Bushnell v. Consolidated Ice Machine Co., 138 Ill. 75; Tarbell v. Page, 24 Ill. 46; Fay v. Noble, 7 Cush. (Mass.) 188; Trowbridge v. Scudder, 11 Cush. (Mass.) 83; First National Bank of Salem v. Almy, 117 Mass. 476.

A *de facto* corporation exists where there is a statute allowing the formation of a corporation for such a purpose, an attempt in good faith to comply with the law, and an exercise of corporate functions under it. Bushnell v. Consolidated Ice Machine Co., 138 Ill. 73, and cases there cited.

JOHN V. A. WEAVER, attorney for appellee, contended that where parties assume to act in a corporate capacity without a legal organization, as a corporate body, those who are charged as corporators or partners are liable if they can be shown to have been such when the con-

tract sued on was made. Fuller v. Rowe, 57 N. Y. 26; Bank v. Davies, 43 Ia. 424; Huer v. Carmichael, 82 Ia. 288; Harris v. McGregor, 29 Cal. 124; Shorb v. Beaudry, 56 Cal. 446; Abbott v. Omaha Smelting Co., 4 Neb. 416; Field v. Cooks, 16 La. An. 153; Chaffie v. Ludeling, 27 La. An. 607.

No mere intention on the part of the members of an unincorporated association to be a corporation will suffice to restrict their individual liability to that imposed upon corporate shareholders, and there being no corporation their liability can not be a corporate one, but must be that of a joint stock company. Martin v. Fewell, 79 Mo. 401; Kaiser v. Lawrence Savings Bank, 56 Ia. 104; Coleman v. Coleman, 78 Ind. 346.

MR. JUSTICE ADAMS delivered the opinion of the court.

Two questions of law are presented for decision: first, whether the judgment can be sustained under section 18 of chapter 32 of the statutes; second, whether it can be sustained against appellants as partners of the other defendants in the action. Sections 16 and 18 are as follows:

Section 16. " If the indebtedness of any stock corporation shall exceed the amount of its capital stock, the directors and officers of such corporation, assenting thereto, shall be personally and individually liable for such excess, to the creditors of such corporation."

Section 18. " If any person or persons being, or pretending to be, an officer or agent, or board of directors, of any stock corporation, or pretended stock corporation, shall assume to exercise corporate powers, or use the name of any such corporation, or pretended corporation, without complying with the provisions of this act (or) before all stock named in the articles of incorporation shall be subscribed in good faith, then they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation, or pretended corporation." 1 Starr & Curtis, Ch. 32, Secs. 16 and 18.

In Lewis et al. v. Montgomery, 145 Ill. 30, the court, commenting on section 16, say:

" In Wolverton v. Taylor, 132 Ill. 197, the statute sought to be invoked here was under consideration, and we there

held that while the liability imposed is not penal but contractual, it is like that of a surety, and therefore *stricti juris.* This being the case, the statute should receive a construction in consonance with the nature of the obligation imposed. The words employed should be interpreted according to their plain and obvious meaning, and should not be extended by construction so as to embrace cases not clearly within the terms of the statute. The liability is created only when the indebtedness of the corporation exceeds the amount of the capital stock, and is imposed only upon the directors and officers assenting to such excess of indebtedness. This plainly means assenting to its creation. Manifestly, a recognition of the indebtedness by the directors, after it has been so contracted as to become binding on the corporation, should not have the effect of charging them with this statutory liability. After the indebtedness has been created by such agents and in such manner as to constitute it a valid obligation of the corporation, it becomes the duty of the directors to recognize its validity, and, so far as is in their power, provide for its payment."

The court further held that the assent of the directors or officers " could only be given by some affirmative, voluntary act on their part, or at least some active participation or co-operation in the particular transaction out of which the indebtedness arose." The court in the case cited not only held that section 16 should be strictly construed, but practically so construed it, by holding that persons who were directors when indebtedness in excess of the amount of the capital stock of the company was created, but who did not, in fact, participate in the creation of such excessive indebtedness, could not be made liable.

In Huntington v. Attrill, 146 U. S. 657, the question was presented whether the following section of a statute of the State of New York was a strictly penal law:

" If any certificate or report made, or public notice given by the officers of such corporation, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the corporation contracted while they were officers thereof."

The court, while holding that the statute was not penal

in the sense that it could not be enforced by the Federal courts, say:

"As the statute imposes a burdensome liability on the officers for their wrongful act, it may well be considered penal, in the sense that it should be strictly construed."

We think the decision of the court in Lewis v. Montgomery, *supra*, that section 16 must be construed strictly, is equally applicable to section 18, and that the latter section must be strictly construed, and creditors seeking a remedy under it must prove a case "clearly within the terms" of the section. Nor can creditors of a *de facto* corporation, who have dealt with it as a corporation, rightfully complain of this, because, having so dealt with it, they could not, in the absence of the statute, be heard to deny its corporate existence, and could not hold its officers or agents contracting in its name personally liable. Bushnell v. Consolidated Ice Machine Co., 138 Ill. 67.

Counsel for appellee contend that there was a mere joint enterprise of the stockholders, including appellants, under the name of the Thompson & Edwards Fertilizer Company, but we can not accede to this view. In the case last cited, the court say of the Ice Machine Company:

"From the facts set up in the bill, it clearly appears that there was an honest attempt by the incorporators to organize a corporation authorized by the laws of this State. It is shown by the bill that upon the issuing of that certificate its directors elected the proper officers and proceeded to the transaction of business as a corporation, and continued to act as such until the filing of this bill, a period of more than five years. That these facts establish a corporation *de facto* is settled by numerous decisions of this court," citing numerous cases.

The facts in evidence in the present case are substantially the same as said by the court to have been shown by the bill in the case cited, and in this case, as in that, the sole omission was the failure to file for record the certificate of complete organization.

Appellee's counsel will hardly contend that the Fertilizer Company was not, at least, a "pretended stock corpora-

tion," and the liability mentioned in section 18 is imposed upon the person or persons being or pretending to be an officer, agent or board of directors of any stock corporation, or " pretended stock corporation." And the liability is that " they shall be jointly and severally liable for all debts and liabilities made by them, and contracted in the name of such corporation or pretended corporation."

Appellee's counsel does not and, in view of the evidence, can not claim that appellants, Hoyt and Edwards, or either of them, in fact participated or co-operated in any way in the purchase from appellee, or in the execution of the notes given in settlement of that purchase, or even that they or either of them had any knowledge of either of those trans- actions at the times respectively when they occurred. Appellee's counsel bases its right to recover solely on the facts that appellants were directors, and that appellant Hoyt was an officer, and there is nothing else in the record on which to base it.

In Lewis v. Montgomery, *supra*, the court say :

" The directors, though the governing body of the corpo- ration, are only its officers and agents, and any subordinate agent appointed by them, or acting by virtue of their suf- ference or recognition, does not thereby become their agent, but the agent of the corporation. His acts are the acts of the corporation, so as to make it liable for debts or obliga- tions incurred by him on its behalf, but they are not the acts of the directors, unless commanded or authorized by them."

The court further held, as heretofore stated, that the assent intended by section 16 " could only be given by some affirmative, voluntary act on their part, or at least some active participation or co-operation in the particular trans- actions out of which that indebtedness arose." By section 16 directors and officers are made liable for indebtedness in excess of the amount of the capital stock to which they assent, while by section 18, officers, agents and directors are made jointly and severally liable for all debts and liabilities made by them. The words " made by them " in section 18 are cer- tainly as strong as the words " assenting thereto " in sec-

tion 16, and as we think, stronger, and if under section 16 some affirmative, voluntary act, or some active participation or co-operation in the particular transaction, is necessary to the incurring of liability, we can not understand why at least the same should not be necessary under section 18. If the contention of appellee's counsel is correct, that the mere fact that one is a director of a *de facto* corporation such as the Fertilizer Company, would make him personally liable under the statute for a debt contracted by another person, an agent of the corporation, then he would be liable, even though he voted against contracting the liability at a meeting of the board of directors. A construction from which such absurd and unjust consequence might logically follow, must be rejected as unsound. F. E. Barnard made the debt or liability in question, and not appellants or either of them. The liability was created when Barnard contracted with appellee. The Fertilizer Company received the material contracted for and used it in its business, and the execution of the promissory notes in settlement of the liability previously created, was a mere recognition of that liability, and not a violation of the statute. Lewis v. Montgomery, 145 Ill. 47.

However, neither of the appellants knew of or had anything to do with the execution of the notes.

The judgment can not be sustained against appellants as partners. The counts which proceed on the theory of partnership, charge the appellants and twelve other persons as partners. The suit was dismissed as to defendant Thompson. Each of the appellants filed a plea denying joint liability with the other defendants, and also a plea denying partnership with the other defendants. These pleas were properly verified by affidavits, and cast on appellee the burden of proving joint liability of the defendants or partnership. Kennedy v. Hall, 68 Ill. 165; Smith v. Knight, 71 Ib. 148; Walker v. Wood, 170 Ib. 463.

This appellee undertook to do by proving that the defendants were stockholders in the Fertilizer Company, but only succeeded in proving that eight of the thirteen defend-

ants were stockholders when the liability in question was created. Appellee failed to prove partnership or joint liability of appellant with the other defendants. This renders unnecessary the discussion of the question whether the stockholders were, on the facts proven, liable as partners.

The judgment will be reversed and the cause remanded.